JODI LINKER
Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Work Cellphone:     (415) 517-4879
Email:         Joyce_Leavitt@fd.org

Counsel for Defendant RAMOS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMON DE LA TORRE RAMOS,<br><br>Defendant. | Case No.: CR 22–00132 HSG<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:         June 12, 2024<br>Time:         2:00 p.m. |

**I.     INTRODUCTION**

Ramon De La Torre Ramos will be sentenced by this Court on June 12, 2024, after having pled guilty to conspiracy to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, in violation of 21 U.S.C. §§ 846 and 843. The probation officer calculates the resulting applicable guideline range to be 2-8 months' custody and recommends a "time-served" sentence based on a number of factors including Mr. Ramos' post-offense rehabilitation, as demonstrated by his successful completion of the Conviction Alternative Program (CAP). *See* Presentence Investigation Report disclosed May 29, 2024 ("PSR"), Sentencing Recommendation at p. 2-3. Mr. Ramos asks the Court to sentence him to "time served"

consistent with the probation officer's recommendation, based upon his post-offense rehabilitation and other factors.

Much has changed since Mr. Ramos first appeared in federal court in April 2022. At the time of his arrest, Mr. Ramos was using alcohol, marijuana, and cocaine daily, as well as prescription pills such as Vicodin and Norcos bi-weekly *See* PSR at ¶ 57. Although he was not arrested and charged federally until 2022, the offense conduct underlying Mr. Ramos' federal case started when Mr. Ramos was in the throes of his addiction—late 2019 through October 2020. *Id.*; Plea Agreement at ¶ 2. Shortly after his October 2020 arrest, Mr. Ramos participated in a men's residential program called Victory Outreach, which he has continued to participate over the years. PSR at ¶ 57. He also completed the district court's CAP program. In light of Mr. Ramos' post-offense rehabilitation and other sentencing factors, a "time served" sentence is sufficient to meet the goals of sentencing. Mr. Ramos files his sentencing memorandum in support of the request.

## II.   STATEMENT OF FACTS

### A.   Personal Background

Ramon De La Torre Ramos is a 35-year-old young man who was born in Guadalajara, Mexico, came to the United States with his parents when he was just a few months old, and subsequently become a United States citizen. PSR at p.3; *Id*. at ¶¶ 44, 45. Mr. Ramos described his childhood to the probation officer, on the one hand detailing his participation in the Boys and Girls Club, playing sports, and yearly family trips to Mexico, while at the same time describing incredibly traumatic events which deeply impacted him. *Id*. at ¶¶ 45, 46, 48. For example, Mr. Ramos described witnessing physical assaults, shoot-outs, individuals being shot and killed, and other violence in his neighborhood. *Id*. at ¶ 48. Several of his close family members died when he was young, including his grandfathers, an uncle, and some of his cousins. *Id*. at ¶ 48. When he was just eight or nine years old, Mr. Ramos was the victim of sexual abuse by a school janitor. *Id*. at ¶ 46. At the time, the school supported the janitor over Mr. Ramos because he had been a long-time employee of the school district. *Id*. This was painful and disillusioning to Mr. Ramos and it affected him tremendously. *Id*. These events all contributed to Mr. Ramos beginning to use drugs and alcohol to self-medicate by the time he was 14 years old; he used alcohol, marijuana, and cocaine on a daily basis for more than half

of his life. *Id*. at ¶ 56.

Mr. Ramos also struggled mentally as a result of his traumatic childhood experiences, and has been diagnosed with post-traumatic stress disorder (PTSD), substance induced depressive disorder, anxiety and depression. *Id*. at ¶ 55. It was after Mr. Ramos' arrest in October 2020 that he finally sought help. *Id*. at ¶¶ 17, 57. Since that time, Mr. Ramos has worked hard to turn his life around. *Id*. at ¶¶ 17, 57, 58.

**B.    Post-Offense Rehabilitation**

Mr. Ramos has participated in the Victory Outreach Program men's residential drug program, starting at the end of 2020. He completed two periods of residency and sobriety, each spanning a year or more, and ultimately became the program's house manager. *Id*. at ¶57. Mr. Ramos held that position until approximately a month ago, when he moved to a Sober Living Environment (SLE) in Hayward, California, through the Second Chance program. *Id*. at ¶ 49.

Mr. Ramos was referred to the CAP program after he pled guilty in this case on March 14, 2023; he was accepted to CAP on May 9, 2023. *Id*. at ¶ 4. Mr. Ramos has participated in CAP over the past year and successfully completed its requirements.

In addition to living at the SLE, Mr. Ramos continues to participate weekly in three groups through the Second Chance program: anger management, a treatment support group, and a relationship support group. *Id*. at ¶ 58. Mr. Ramos' brother, Salvador, expressed his gratitude to the probation officer that Mr. Ramos had been given the opportunity to participate in CAP, stating that he has witnessed his brother change for the better. *Id*. at ¶ 51.

Finally, Mr. Ramos, who has a long history of working (starting at 14 years old when he would help his uncle with landscaping, fencing, and home remodeling), continues to remain employed as a paver and marble installer. *Id*. at ¶ 62. In addition to his sobriety, Mr. Ramos is committed to his work, and to remaining law-abiding. Mr. Ramos' post offense rehabilitation, including his completion of CAP, warrants a "time-served" sentence as recommended by probation in this case.

**III.   DISCUSSION**

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949).  That requires "the sentencing judge to consider every convicted

person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted).  The sentence recommended in the Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor.  *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  This Court has the discretion to sentence Mr. Ramos to a "time-served" sentence pursuant to the sentencing goals set out in 18 U.S.C. § 3553(a) and such a sentence in this case is appropriate.

### A. Post Offense Rehabilitation

This Court can consider "post-crime maturation and self-rehabilitation" at sentencing. *See United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008).  The Supreme Court has "made clear that post-sentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2011) and *Gall*, 552 U.S. at 59 (emphasis added)). Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)).

As described above, Mr. Ramos' post-offense rehabilitation includes lengthy stays at Victory Outreach's residential treatment program and his promotion to house manager. It includes Mr. Ramos' current residence at an SLE through the Second Chance program, as well as his ongoing participation in three weekly groups through that same program. It includes his sobriety. And finally, it includes Mr. Ramos' successful completion of CAP. Based upon his post-offense rehabilitation, a "time-served" sentence is appropriate. 18 U.S.C. § 3553(a).

### B. Mr. Ramos' history and characteristics support the requested sentence

Under 18 U.S.C. § 3553(a), Mr. Ramos' history and characteristics should be considered in determining the appropriate sentence.  "Evidence about the defendant's background and character is

relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987)(O'Connor, concurring). Here, the PSR describes Mr. Ramos having grown up in a violent, impoverished neighborhood where he witnessed people being assaulted and shooting at each other, as well as deaths due to gun violence. PSR at ¶ 48. He suffered additional trauma as described above and in the PSR, *id*. at ¶ 56, and started self-medicating beginning when he was 14 years old. *Id*. at ¶ 56. Mr. Ramos was dependent upon alcohol and drugs for more than half of his life and his diminished capacity at the time of the offense should also be considered under 18 U.S.C. § 3553. He confirmed that his drug use was a big component of what influenced him to commit the offense, stating "I was not thinking straight, and my head was not fully there." *Id*. at ¶ 21. Mr. Ramos has now acquired tools to assist him moving forward. For this reason as well, a non-custodial sentence of "time served," followed by supervised release, strikes the appropriate balance.

## III. CONCLUSION

For the reasons described above, Mr. Ramos requests that the Court vary downward, consistent with the sentencing recommendation of the probation officer, and sentence him to a term of "time served," followed by a three-year term of supervised release.

Dated:   June 5, 2024

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

             /S
JOYCE LEAVITT
Assistant Federal Public Defender